UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

BISHOP PERRY,

                Plaintiff,

v.

M.D.O.C. et al.,

                Defendants.

_____/

Case No. 1:23-cv-286

Honorable Robert J. Jonker

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

**I.**     **Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events

about which he complains occurred at that facility. Plaintiff sues the MDOC and Officer Unknown

Haggagi. Although Plaintiff does not name them in the caption of his complaint, he also appears

to name the following individuals as Defendants: Warden Brian Morrison, Lieutenant Schwensen,

Captain Lamontagne, and Sergeant Clemons. (ECF No. 1, PageID.3.)

Plaintiff alleges that on October 29, 2022,[1] inmate Liddle asked Plaintiff for assistance

regarding how to file a grievance against Defendant Haggagi. (*Id.*, PageID.1.) Later that day,

Defendant Haggagi shook down Plaintiff's area of control and confiscated Plaintiff's racket ball.

(*Id.*) Defendant Haggagi issued Plaintiff a misconduct report alleging that Plaintiff had stolen the

racket ball. (*Id.*) Plaintiff filed a grievance about this incident. (*Id.*)

On November 10, 2022, Defendant Schwensen dismissed the misconduct ticket after

finding Plaintiff not guilty of theft. (*Id.*) Plaintiff asked Defendant Schwensen if he had reviewed

the video footage like Plaintiff asked him to. (*Id.*) Defendant Schwensen said he had not; Plaintiff

then asked him to preserve the footage for litigation. (*Id.*)

On December 8, 2022, Defendant Haggagi shook down Plaintiff's area and took the racket

ball again. (*Id.*) He told Plaintiff that "this is what happens to people who go[] over his head." (*Id.*)

Plaintiff filed another grievance and asked for video footage to be preserved. (*Id.*)

Plaintiff alleges that Defendant Morrison allowed Defendant Haggagi's "actions to go

unnoticed." (*Id.*, PageID.3.) According to Plaintiff, Defendant Morrison denied his grievances at

Step II and failed to train Defendant Haggagi. (*Id.*) Plaintiff also faults Defendants Schwensen and

Lamontagne for failing to train Defendant Haggagi and for failing to take action after reviewing

---

[1] Plaintiff first alleges that this incident occurred on November 29, 2022, but later states that
Defendant Haggagi issued the misconduct report on October 29, 2022. (ECF No. 1, PageID.1.)
Given that Plaintiff appeared before Defendant Schwensen for misconduct proceedings on
November 10, 2022, the Court construes Plaintiff's reference to November 29, 2022, to be a
typographical error.

Plaintiff's grievance. (*Id.*) Finally, Plaintiff alleges that on December 22, 2022, Plaintiff made Defendant Clemons aware of Defendant Haggagi's actions. (*Id.*) Defendant Clemons came to the unit and told Defendant Haggagi that retaliation was not allowed and that he should return the racket ball to Plaintiff. (*Id.*) Defendant Clemons, however, did not report Defendant Haggagi's actions to Defendant Schwensen when he was interviewed. (*Id.*)

Based on the foregoing, Plaintiff asserts First Amendment retaliation claims, as well as Fourteenth Amendment due process claims regarding the misconduct proceedings. Plaintiff also suggests that Defendant Haggagi violated his rights by defaming his character. Additionally, the Court construes Plaintiff's complaint to assert claims regarding the handling of the grievance process. Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id.*, PageID.2.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.      Claims Against the MDOC

As noted above, Plaintiff has named the MDOC as a Defendant. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013);

*McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). Therefore, Plaintiff's claim against the MDOC is properly dismissed on grounds of immunity. In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, Plaintiff's claim against the MDOC also is properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(iii), 1915A(b), and 42 U.S.C. § 1997e(c).

### B.    Supervisory Liability Claims

The Court has construed Plaintiff's complaint as seeking to hold Defendants Morrison, Schwensen, Lamontagne, and Clemons liable because of their respective supervisory positions. Plaintiff suggests that these individuals are liable for failing to train Defendant Haggagi. (ECF No. 1, PageID.3.)

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege any facts suggesting that Defendants Morrison, Schwensen, Lamontagne, and Clemons encouraged or condoned Defendant Haggagi's conduct, or authorized, approved, or knowingly acquiesced in that conduct. Plaintiff avers only that they denied his grievances, failed to review camera footage, and failed to act after the fact. As noted above, that is insufficient to impose § 1983 liability. *See Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Shehee*, 199 F.3d at 300. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Morrison, Schwensen, Lamontagne, and Clemons were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's supervisory liability claims against Defendants Morrison, Schwensen, Lamontagne, and Clemons will be dismissed.

### C.        Claims Regarding the Grievance Process

Plaintiff suggests that Defendants Morrison, Schwensen, Lamontagne, and Clemons violated his rights during the grievance process. Specifically, Plaintiff suggests that Defendant Clemons failed to provide pertinent information to Defendant Schwensen, and that Defendants Morrison, Schwensen, and Lamontagne dismissed his grievances. Plaintiff, however, has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Plaintiff's First Amendment right to petition the government was not violated by Defendants' actions or inactions. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Finally, Defendants' actions or inactions have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right

to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff has failed to state a cognizable claim against Defendants Morrison, Schwensen, Lamontagne, and Clemons based on a failure to act upon Plaintiff's grievances.

### D.      First Amendment Retaliation Claims

Plaintiff contends that Defendant Haggagi violated his First Amendment rights by retaliating against him on two separate occasions. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff

must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1. October 29, 2022, Incident

Plaintiff first suggests that Defendant Haggagi retaliated against him for assisting another inmate with preparing a grievance by confiscating Plaintiff's racket ball and issuing a false misconduct ticket for theft. The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See id.*; *see also Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff, however, does not have an independent right to help others with their legal claims and grievances, unless the inmate receiving the assistance would otherwise be unable to seek redress. *See Herron*, 203 F.3d at 415–16 (citing *Thaddeus-X*, 175 F.3d at 395). While Plaintiff suggests that the other inmate certainly benefited from Plaintiff's assistance, the complaint is devoid of facts showing that the other inmate would have been unable to seek redress in the absence of such assistance from Plaintiff. Plaintiff's retaliation claim against Defendant Haggagi concerning the incident of October 29, 2022, therefore fails at the first step of the inquiry and will be dismissed.

### 2. December 8, 2022, Incident

Plaintiff next alleges that Defendant Haggagi retaliated against him on December 8, 2022, by conducting another shakedown and confiscating the racket ball again. (ECF No. 1, PageID.1.) According to Plaintiff, Defendant Haggagi told him he was confiscating the ball because "this is

what happens to people who go[] over his head." (*Id.*) Plaintiff appears to suggest that Defendant

Haggagi retaliated because Plaintiff was found not guilty of the prior misconduct. (*Id.*)

It is well recognized that "retaliation" is easy to allege and that it can seldom be

demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005);

*Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact

of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory

motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"

*Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir.

1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that

in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory

motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial"

(internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are

allegations of malice on the defendants' parts are not enough to establish retaliation claims [that

will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

The fact that Plaintiff successfully challenged the misconduct issued by Defendant Haggagi

could constitute protected conduct. *See Murray*, 845 F. App'x at 556. Moreover, the complaint

sets forth that Plaintiff filed a grievance against Defendant Haggagi on October 29, 2022, the date

on which Defendant Haggagi issued the misconduct. That grievance constitutes protected conduct

as well. *See Smith*, 250 F.3d at 1037; *Herron*, 203 F.3d at 415. Plaintiff, however, fails to allege

sufficient facts from which the Court could plausibly conclude that Defendant Haggagi confiscated

the racket ball a second time because of Plaintiff's protected conduct. As an initial matter, the

complaint is devoid of facts from which the Court could infer that Defendant Haggagi was aware

that Plaintiff had filed a grievance on October 29, 2022. Furthermore, it is unclear whether Plaintiff

has met the second element of a retaliation claim because only one cell search occurred, and Plaintiff does not allege facts suggesting that his cell was left in disarray or that Defendant Haggagi engaged in a pattern of unnecessary cell searches.

Furthermore, Plaintiff's suggestion that Defendant Haggagi retaliated because Plaintiff was found not guilty appears to target Defendant Schwensen's decision, not the fact that Plaintiff was engaged in protected conduct when he chose to challenge the misconduct and present a defense. Nothing in the complaint permits the Court to infer that Defendant Haggagi was aware of Plaintiff's challenge to and defense of himself during the misconduct hearing and confiscated the racket ball a second time because of that protected conduct.

In sum, Plaintiff merely alleges the ultimate fact of retaliation with respect to the second incident. Even though Plaintiff alleges that Defendant Haggagi told him he confiscated the ball because Plaintiff went over his head, that statement is too vague to infer that Defendant Haggagi confiscated the ball because of any of Plaintiff's protected conduct. Plaintiff's second retaliation claim against Defendant Haggagi will, therefore, also be dismissed. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### E.    Fourteenth Amendment Due Process Claims

Plaintiff suggests that Defendant Haggagi violated his Fourteenth Amendment due process rights by issuing a false misconduct for theft of the racket ball, and that Defendant Schwensen failed to review the video footage before finding Plaintiff not guilty of the misconduct. A prisoner's ability to challenge a misconduct conviction depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting

restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 487 (1995).

With respect to the misconduct ticket, Plaintiff's complaint clearly indicates that he was found not guilty and the ticket was dismissed. Plaintiff, therefore, received due process of law with respect to the misconduct ticket. "Due process of law requires only that the person have the opportunity to convince an unbiased decision maker that he has been wrongly or falsely accused or that the evidence against him is false." *Onumonu v. Mich. Dep't of Corr.*, No. 1:21-cv-33, 2021 WL 972809, at *3 (W.D. Mich. Mar. 16, 2021). The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment due process claims against Defendants Haggagi and Schwensen regarding his misconduct proceedings.[2]

---

[2] To the extent Plaintiff intended to raise Fourteenth Amendment substantive due process claims regarding the alleged false misconduct and any other actions or inactions by Defendants, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). With respect to an allegedly falsified misconduct report, the Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378 (6th Cir. 1999). Plaintiff's complaint, however, is devoid of any allegations from which the Court could infer that any of the named Defendants acted to frame Plaintiff.

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x

**F.      Defamation Claim**

Plaintiff suggests that Defendant Haggagi defamed his character by issuing a false misconduct ticket. (ECF No. 1, PageID.1.) Plaintiff contends that if he had been found guilty of the misconduct, the Michigan Parole Board or the appeals court would have labeled him as an individual who has not been rehabilitated. (*Id.*) In turn, Plaintiff claims, those entities would have denied him an appeal and a parole hearing. (*Id.*)

A plaintiff asserting a § 1983 defamation claim must, in addition to proving the elements of a defamation claim, show "[s]ome alteration of a right or status 'previously recognized by state law,' such as employment." *Quinn v. Shirey*, 293 F.3d 315, 319 (6th Cir. 2002) (quoting *Paul v. Davis*, 424 U.S. 693, 711–12 (1976)). Plaintiff's complaint is completely devoid of facts suggesting that Defendant Haggagi's issuance of the false misconduct led to the alteration of any right or status conferred upon Plaintiff by state law. The Michigan Supreme Court has recognized that there exists no liberty interest in parole under Michigan law. *See Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603–04 (Mich. 1999). The Court, therefore, will dismiss Plaintiff's defamation claim against Defendant Haggagi. *See Marshall v. Richardson*, No. 1:19-cv-45, 2019 WL 478501, at *3 (W.D. Mich. Feb. 7, 2019) (noting that "[t]here is no federal or constitutional protection against statements that harm a person's reputation").

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

---

911, 923 (6th Cir. 2013). In this case, the First Amendment, as well as the Fourteenth Amendment's procedural due process clause, apply to protect Plaintiff's rights. Consequently, any intended substantive due process claims will be dismissed.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    April 17, 2023                              /s/ Robert J. Jonker
                                                      Robert J. Jonker
                                                      United States District Judge

14